UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL TAHENY, et al.,

NO. CIV. S-10-2123 LKK/EFB

       Plaintiffs,

   v.

O R D E R

WELLS FARGO BANK, N.A.,
et al.,

       Defendants.

_____/

This case concerns the pending foreclosure of plaintiffs' home and plaintiffs' eviction from this home. Plaintiffs originally filed suit in California Superior Court, County of El Dorado on July 26, 2010. Defendants removed the case to federal court based on diversity jurisdiction on August 05, 2010. Defendants then moved to dismiss plaintiffs' original complaint.

On October 5, 2010, while defendants' motion to dismiss was pending before the court, plaintiffs sought a temporary restraining order ("TRO") against the foreclosure of their home. On October 12, 2010, after defendants' counsel failed to appear at the TRO

1

hearing, the court granted the TRO. On October 21, 2010, pursuant to a stipulation of the parties, the court ordered that (a) the motion to dismiss would be denied without prejudice as moot, (b) the hearing on the motion for a preliminary injunction is continued to November 22, 2010, and (c) plaintiffs were to file the First Amended Complaint ("FAC") immediately. Defendants also agreed to postpone the foreclosure on plaintiffs' home until Tuesday, November 30, 2010. On November 15, 2010 this court granted the plaintiff's request for a preliminary injunction, enjoining the defendants from foreclosing upon the subject property until further order of the court. ECF No. 26.

Plaintiffs filed their first amended complaint ("FAC") on October 21, 2010, alleging eight causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) breach of fiduciary duty; (5) negligence; (6) declaratory relief; (7) unfair business practices, Cal. Bus Prof.Code §§ 17200, et seq.; (8) for an accounting. ECF No. 20. On November 3, 2010, defendants moved to dismiss all of the claims in the case. ECF No. 5. For the reasons stated below, defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs own the property located at 2366 Telegraph Hill Drive, El Dorado Hills, California. FAC ¶ 20. Plaintiffs purchased their home on April 28, 2000, by making a $100,000 down payment and executing a purchase money loan with defendant World Savings Bank, FSB ("World Savings"). ¶ 22. Plaintiffs

allege that World Savings employed a "bait and switch" tactic to induce plaintiffs to execute a total of four loan transactions, including the purchase money loan, by misrepresenting the terms of the transactions during the application process and then presenting different terms to plaintiffs at closing. ¶ 14. Plaintiffs contend that World Savings used the "bait and switch" tactic to fraudulently induce borrowers such as plaintiffs to execute loan agreements with unfavorable terms repeatedly in order to extract equity from them and eventually foreclose on their homes. ¶ 13. They further allege that World Savings promised plaintiffs they could refinance the senior loans at issue in this action, if they chose to do so, even though such financing was not available. ¶ 15. The additional loan transactions, including the senior loans, that plaintiffs entered into are described below.

On April 17, 2001, plaintiffs refinanced their home ("2001 Refinance") with a second loan from World Savings. ¶ 26. In this transaction, plaintiffs allege that World Savings was the lender and that the loan was secured by a deed of trust naming defendant Golden West Savings Association Company ("Goldent West"), parent company of World Savings, as trustee. ¶ 29. Prior to executing the loan agreement, plaintiffs informed World Savings that plaintiff Michael Taheny had recently become disabled and that, as a result, their monthly income had dropped. ¶ 25, 28. Nevertheless, World Savings maintained that plaintiffs qualified for the refinance, but requested no

documentation that could attest to plaintiff's ability to pay down the loan. ¶ 28. The terms of this refinance were "virtually identical" to the purchase money loan and resulted in a $7000 loss of equity in the property. ¶ 31.

On January 30, 2002, plaintiff's took out a second mortgage on their home through Countrywide Homes, who is not a party to this action. ¶ 32. On August 5, 2003, World Saving's Loan Officer Ed Kim, also not a party to this action, contacted plaintiffs and encouraged them to take out a third World Savings loan to refinance and consolidate their 2001 Refinance and second mortgage loans. ¶ 33. When applying for the loan, plaintiffs again mentioned their reduced income to the loan officer that advised plaintiffs about the loan; however, the loan officer told plaintiffs that they could qualify for the refinance based on the income stated in their April 2000 purchase money loan transaction. ¶ 38.

On August 7, 2003, plaintiffs executed the second refinance of their home loan ("2003 Refinance") in an effort to consolidate the 2001 Refinance and the second mortgage. ¶¶ 39-40. In this transaction, World Savings again acted as the lender, and the deed of trust designated Golden West as trustee. ¶ 41. This 2003 Refinance is one of the two senior loans at issue in this action. The 2003 Refinance included a "Rider to Security Instrument and Modification to Note: Fixed Rate Option Feature ("Conversion Option")", which expressly afforded plaintiffs the right to convert the adjustable rate interest to

4

a fixed rate at any time after one year, but not later than seven years, from the loan origination date. ¶ 43.

Plaintiffs purchased the second senior loan at issue in the instant action, a Home Equity Line of Credit ("HELOC") in the amount of $200,000, from World Savings on September 22, 2005. ¶ 61. In this transaction, World Savings acted as the lender, and the deed of trust designated Golden West as trustee. ¶ 62.

Plaintiffs allege various defects in the origination of these senior transactions, including the change in terms at closing, ¶¶ 42, 63, overstatement of plaintiffs' income and property value, ¶ 38, 57-59, and misrepresentations regarding the possibility of future refinancing, ¶ 72. Plaintiffs claim that they continued to employ World Savings' services because World Savings had assured plaintiffs that it would act as a fiduciary of plaintiffs and not put its interests before those of the plaintiffs. ¶¶ 83-84.

On May 7, 2006, defendant Wachovia Mortgage, FSB ("Wachovia") purchased Golden West, and Wachovia became the successor in interest and liabilities to Golden West and World Savings. Wachovia completed the integration process with Golden West in mid-2008. On December 31, 2008, defendant Wells Fargo Bank, N.A. ("Wells Fargo") purchased Wachovia, and Wells Fargo became the successor in interest and liabilities to Wachovia.

In 2007 and 2008, the interest rate of plaintiffs' 2003 Refinance loan increased significantly, rising to 8.3 percent and making plaintiffs unable to "pay down" the HELOC and 2003

1  Refinance loans. ¶ 64. Plaintiffs had to use $70,000 of the

2  HELOC funds to "pay down" both loans. Id. During that time,

3  plaintiffs twice attempted to exercise the conversion option

4  included in their 2003 Refinance. ¶¶ 66-67. Plaintiffs contacted

5  World Savings in July 2007 and encountered a non-operational

6  customer service number and several World Savings

7  representatives who were unable to help plaintiffs exercise the

8  option. ¶ 66. Then, in December 2008, plaintiffs contacted Loan

9  Officer Brad McGirt, an employee of Wachovia who is not a party

10 to this action, to exercise the conversion option. ¶ 67. Mr.

11 McGirt told plaintiffs they would have to fill out a loan

12 application and pay a ninety-five dollar application fee to

13 exercise the option. ¶ 68. After they had paid the fee and

14 submitted their income documents, plaintiffs could not get in

15 touch with Mr. McGirt or anyone else who could assist them with

16 the conversion option. Id. When plaintiffs contacted Wachovia,

17 they were told that no records of their application or any

18 contact between plaintiffs and Mr. McGirt existed. Id.

19      Ultimately, plaintiffs defaulted under both the 2003

20 Refinance and HELOC. ¶ 75. On April 16, 2009, Ndex West, LLC

21 ("Ndex West") recorded a Notice of Default on plaintiffs'

22 property. ¶ 76. However, Ndex West did not substitute as trustee

23 of record until May, 15, 2009. ¶ 77. Since defaulting,

24 plaintiffs have been unable obtain a loan modification or

25 refinance their loans. ¶ 78.

26      In May 2010, plaintiffs hired an independent auditing

1   company to perform a forensic loan audit on all of the loan

2   documents pertaining to the aforementioned loans. ¶ 80.

3   Plaintiffs allege the audit revealed "compliance violations and

4   evidence of fraud," but made no specific allegations as to the

5   types of violations the audit revealed. Id. Plaintiffs have not

6   submitted any additional documentation regarding the audit.

7   Plaintiffs also mention that on May 21, 2010, plaintiffs sent a

8   Qualified Written Request ("QWR")to World Savings and Wachovia

9   to which neither has responded. ¶ 81.

10                          **II.  STANDARDS**

11  **A. Standard for a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)**

12      A Fed.R.Civ.P. 12(b)(6) motion challenges a complaint's

13  compliance with the pleading requirements provided by the Federal

14  Rules. In general, these requirements are established by

15  Fed.R.Civ.P. 8, although claims that "sound [ ] in" fraud or

16  mistake must meet the requirements provided by Fed.R.Civ.P. 9(b).

17  Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir.2003).

18  **1. Dismissal of Claims Governed by Fed.R.Civ.P. 8**

19      Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

20  contain a "short and plain statement of the claim showing that the

21  pleader is entitled to relief." The complaint must give defendant

22  "fair notice of what the claim is and the grounds upon which it

23  rests." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (internal

24  quotation and modification omitted).

25      To meet this requirement, the complaint must be supported

26  by factual allegations. Iqbal, 129 S.Ct. at 1950. "While legal

7

conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore proscribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[1]

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts

---

[1] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir.1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987).

1   alleged under a cognizable legal theory. <u>Balistreri v. Pacifica</u>
2   <u>Police Dep't,</u> 901 F.2d 696, 699 (9th Cir. 1988).

3        The line between non-conclusory and conclusory allegations is
4   not always clear. Rule 8 "does not require 'detailed factual
5   allegations,' but it demands more than an unadorned,
6   the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S.Ct.
7   at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955). While
8   <u>Twombly</u> was not the first case that directed the district courts
9   to disregard "conclusory" allegations, the court turns to <u>Iqbal</u> and
10  <u>Twombly</u> for indications of the Supreme Court's current
11  understanding of the term. In <u>Twombly</u>, the Court found the naked
12  allegation that "defendants 'ha[d] entered into a contract,
13  combination or conspiracy to prevent competitive entry ... and
14  ha[d] agreed not to compete with one another,' " absent any
15  supporting allegation of underlying details, to be a conclusory
16  statement of the elements of an anti-trust claim. <u>Id.</u> at 1950
17  (quoting <u>Twombly</u>, 550 U.S. at 551, 127 S.Ct. 1955). In contrast,
18  the <u>Twombly</u> plaintiffs' allegations of "parallel conduct" were not
19  conclusory, because plaintiffs had alleged specific acts argued to
20  constitute parallel conduct. <u>Twombly</u>, 550 U.S. at 550-51, 556, 127
21  S.Ct. 1955.

22       <u>Twombly</u> also illustrated the second, "plausibility" step of
23  the analysis by providing an example of a complaint that failed and
24  a complaint that satisfied this step. The complaint at issue in
25  <u>Twombly</u> failed. While the <u>Twombly</u> plaintiffs' allegations regarding
26  parallel conduct were non-conclusory, they failed to support a

9

1   plausible claim. <u>Id.</u> at 566, 127 S.Ct. 1955. Because parallel

2   conduct was said to be ordinarily expected to arise without a

3   prohibited agreement, an allegation of parallel conduct was

4   insufficient to support the inference that a prohibited agreement

5   existed. <u>Id.</u> Absent such an agreement, plaintiffs were not entitled

6   to relief. <u>Id.</u>

7        In contrast, <u>Twombly</u> held that the model pleading for

8   negligence demonstrated the type of pleading that satisfies Rule

9   8. <u>Id.</u> at 565 n. 10, 127 S.Ct. 1955. This form provides "On June

10  1, 1936, in a public highway called Boylston Street in Boston,

11  Massachusetts, defendant negligently drove a motor vehicle against

12  plaintiff who was then crossing said highway." Form 9, Complaint

13  for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C.App.,

14  p. 829. These allegations adequately " 'state[ ] ... circumstances,

15  occurrences, and events in support of the claim presented.' "

16  <u>Twombly</u>, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (quoting 5 C. Wright

17  & A. Miller, Federal Practice and Procedure § 1202, at 94, 95 (3d

18  ed.2004)). The factual allegations that defendant drove at a

19  certain time and hit plaintiff render plausible the conclusion that

20  defendant drove negligently.

21  **2. Dismissal of Claims Governed by Fed.R.Civ.P. 9(b)**

22       A Rule 12(b)(6) motion to dismiss may also challenge a

23  complaint's compliance with Fed.R.Civ.P. 9(b). <u>See</u> <u>Vess</u>, 317 F.3d

24  at 1107. This rule provides that "In alleging fraud or mistake, a

25  party must state with particularity the circumstances constituting

26  fraud or mistake. Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.' " Id. at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

### III. ANALYSIS

### A. The Claims Regarding Loan Origination are Time Barred

Defendants argue that the claims based on alleged defects with the loan transactions are untimely and barred by the statute of limitations. Defs.' Mem. at 1-2; see Cal. Code Civ. Proc. § 338(b) (negligence, three year statute of limitations); Cal. Code Civ. Proc. § 338(d) (fraud, three years); Cal. Civ. Code Civ. Proc. § 343 (breach of fiduciary duty, four years); Cal. Bus. & Prof. Code § 17208 (unfair competition, four years).   The court agrees. Plaintiffs have not alleged facts sufficient to indicate a possibility of equitable tolling or delayed accrual.   Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006) (citing Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995)).

The court notes, however, that the invocation of the statute

1  of limitations in the context of a motion to dismiss raises
2  specific concerns, especially when the plaintiff raises an
3  equitable tolling or equitable estoppel argument, because it is an
4  affirmative defense. "Generally, the applicability of equitable
5  tolling depends on matters outside the pleadings, so it is rarely
6  appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if
7  equitable tolling is at issue." Huynh v. Chase Manhattan Bank, 465
8  F.3d 992, 1003-04 (9th Cir.2006) (citing Supermail Cargo, Inc. v.
9  United States, 68 F.3d 1204, 1206 (9th Cir.1995)).

10      In light of these concerns, the Ninth Circuit has held that
11  a motion to dismiss on statute of limitations grounds cannot be
12  granted if "the complaint, liberally construed in light of our
13  'notice pleading' system, adequately alleges facts showing the
14  potential applicability of the equitable tolling doctrine."
15  Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir.1993);
16  see also Morales v. City of Los Angeles, 214 F.3d 1151, 1153, 1155
17  (9th Cir.2000). The Supreme Court's recent decisions in Twombly and
18  Iqbal, which concerned the requirements of Fed.R.Civ.P. 8, do not
19  provide reason to revisit this rule because equitable tolling turns
20  on matters outside of the pleadings. Although the Ninth Circuit has
21  not discussed the rule since Twombly was decided, other courts have
22  continued to follow it. Plascencia v. Lending 1st Mortg., 583
23  F.Supp.2d 1090, 1098 (N.D.Cal.2008), Nava v. VirtualBank, 2008 WL
24  2873406, 2008 U.S. Dist. LEXIS 72819 (E.D.Cal. July 16, 2008)
25  (Damrell, J); see also USPPS, Ltd. v. Avery Dennison Corp., 326
26  Fed.Appx. 842 (5th Cir. 2009) (unpublished Fifth Circuit decision

1  applying a similar rule).

2      The Ninth Circuit has held that dismissal was appropriate
3  where "it [was] clear that [plaintiffs] have had the information
4  necessary to bring suit ... for many years," and plaintiffs did not
5  argue that "extraordinary circumstances beyond [their] control made
6  it impossible to file the claims on time." Lien Huynh, 465 F.3d at
7  1004. Conversely, dismissal was inappropriate where plaintiff
8  alleged both "that it did not discover" the defendant's alleged
9  wrongdoing until soon before the claim was filed and that
10 plaintiff's "failure to discover the [wrongdoing] earlier was not
11 due to [plaintiff's] lack of diligence, but rather to the
12 [defendant]'s deliberate failure to provide [plaintiff] with
13 accurate information." Supermail Cargo, 68 F.3d at 1208; see also
14 Cervantes, 5 F.3d at 1277 (reversing dismissal).

15     Although plaintiffs in this case allege that they did not
16 discover defendants' "unlawful acts" until after conducting a
17 forensic loan audit of their loans in May 2010, FAC ¶ 88,
18 plaintiffs do not provide any explanation as to why their loan
19 documents or increasing mortgage bills did not provide them notice
20 as to the change in loan terms, or as to the senior loans at issue
21 — the 2003 Refinance and the HELOC in 2005 — why the jump in
22 interest in March 2006, ¶ 45, and in December 2005 respectively,
23 see ¶ 63, did not provide notice as to World Savings' alleged
24 misrepresentations regarding the loan terms.

25     It appears that plaintiffs knew about the discrepancies with
26 their loan products over four years ago, but did not pursue legal

13

action until July 2010. Therefore, plaintiffs claims regarding the HELOC and 2003 Refinance loan origination transactions are time-barred. However, plaintiffs' causes of action, insofar as they are based on defendants' failure to comply with the conversion option agreement in the 2003 Refinance loan, did not accrue until at least July 2007, when plaintiffs sought to exercise their conversion option, but were unable to despite their efforts. The court addresses each of the remaining causes of action below.

**B. Specific Claims**

**1. Breach of Contract**

Plaintiffs bring a claim for breach of contract against defendant based on World Savings and Wachovia's failure to allow plaintiffs to exercise the conversion option included in the 2003 Refinance loan transaction. FAC ¶ 91-98. "A cause of action for breach of contract does not accrue before the time of breach." Romano v. Rockwell Intl., 59 Cal. Rptr. 2d 20, 25 (Cal. 1996). Therefore, plaintiffs' cause of action for breach of contract did not accrue until at least July 2007, when plaintiffs sought to exercise their conversion option, but were unable to do so despite their efforts. Therefore, plaintiffs' claims for breach of contract is timely filed.

A cause of action for breach of contract requires: (1) that a contract exists between the parties, (2) that the plaintiff performed his contractual duties or was excused from nonperformance, (3) that the defendant breached those contractual duties, and (4) that plaintiff's damages were a result from the

14

1  breach. <u>First Commercial Mortgage Co. v. Reece</u>, 89 Cal. App. 4th

2  731, 745 (2001); <u>Reichert v. General Ins. Co.</u>, 68 Cal. 2d 822, 830

3  (1968). Plaintiffs allege that defendant Wells Fargo breached the

4  Conversion Option agreement by failing to assist or enable

5  plaintiffs to exercise that option despite plaintiffs fulfillment

6  of the conditions necessary to do so. FAC ¶¶ 95-96, 101.

7       Defendant argues that plaintiffs have not pled compliance with

8  the eligibility requirements of the Conversion Option and that they

9  have not articulated how the conversion would have reduced their

10  payments thereby resulting in damages due to excessive mortgage

11  payments. Defs.' Mem. at 2:14-24. However, in paragraph 101 of

12  their FAC, plaintiffs' state that they "met the specified

13  conditions as set forth in the loan document to exercise their

14  Conversion Option," and that, when attempting to exercise the

15  option in December of 2008 with the help of Mr. McGirt, they were

16  assured the loan would close "into a 30 year 4.85% fixed rate

17  mortgage."[2] If, as plaintiffs allege, the interest rate on the 2003

18  Refinance increased to 8.3% in the years 2007 and 2008, ¶ 64, then

19  it is reasonable to infer that their payments on the 2003 Refinance

20  would have decreased by 3.45% had they been able to exercise the

21  Conversion Option at the stated rate and, if nothing else,

22  allegedly suffered monetary damages from overpayment for the

23

24       [2] Plaintiffs allege two different interest rates when
    discussing their attempt to exercise the conversion option through
    Mr. McGirt. Plaintiffs assert that the rate for the fixed loan
25  after conversion would have been 4.625% or 4.85%, FAC ¶¶ 68 and 96,
    128, respectively. The court assumes the higher rate of 4.85% is
26  correct for purposes of this motion.

indeterminate length of time after December 2008 that they continued making payments on the 2003 Refinance. The court finds, based on these allegations, that plaintiffs' claim for breach of contract survives dismissal. Defendant's motion to dismiss is DENIED with respect to breach of contract of the 2003 Refinance loan.

**2. Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' second cause of action is for breach of the implied covenant of good faith and fair dealing, which provides that no party to a contract may do anything that would deprive another party of the benefits of the contract. Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988). Under California law, every contract carries with it an implied covenant of good faith and fair dealing. Carma Developers, Inc. v. Marathon Development Cal., Inc., 2 Cal. 4th 342, 371 (1992). This duty requires contracting parties to exercise discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting. Id. at 372-73. A party breaches this duty when it acts in a way that deprives another contracting party of benefits conferred by the contract.

Plaintiffs allege that defendant Wells Fargo breached the implied covenant of good faith and fair dealing when it "interfered with [p]laintiffs' right to receive the benefits of the contract which expressly allowed [p]laintiffs to convert their adjustable rate loan into a fixed rate loan" by and through World Savings's and Wachovia's failure to allow plaintiffs to exercise

16

the Conversion Option included in their 2003 Refinance loan transaction, despite plaintiffs' alleged fulfillment of the Conversion Option's eligibility requirements. FAC ¶ 100-102. In allegedly failing to comply with the requirements of the conversion option, defendant deprived plaintiffs of a benefit of the contract — the opportunity to exercise their conversion option and secure a fixed rate of interest. These allegations suffice to state a claim for breach of the covenant of good faith and fair dealing that informs defendants of its basis. Therefore, defendant's motion to dismiss plaintiff's claim for breach of implied covenant of good faith and fair dealing is DENIED.

**3. Fraud**

Plaintiffs' third claim is for fraud, both in the inception of the loans and as to the Conversion Option. FAC ¶ 106-149. Plaintiffs claims of fraud in the inception are time-barred, therefore, the court addresses only the claim of fraud based on the Conversion Option here.

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation and citation omitted). Plaintiffs in the instant case do not allege a specific intention by either World Savings or Wachovia not to perform on the Conversion Option. The California Supreme Court has emphasized that "something more than nonperformance is required to prove the defendant's intent not to perform his

promise." Tenzer v. Superscope, Inc., 39 Cal.3d 18, 30 (1985). However, "fraudulent intent must often be established by circumstantial evidence." Id. Here, plaintiffs allegations regarding their attempts to exercise the option, specifically World Savings and Wachovia employees' inability to put plaintiffs in contact with someone who could assist them in exercising the option and Mr. McGirt's sudden cessation of contact with the plaintiffs, support an inference of intent to defraud. FAC ¶¶ 127-28.

As for plaintiffs' contention that Wachovia committed fraud when it misrepresented to plaintiffs that they could obtain a loan modification, ¶ 140, it is flawed in two respects. Again plaintiffs fail to show Wachovia had an intent to defraud and make no additional allegations that could support an inference of intent. Additionally, even if plaintiffs had demonstrated such an intent, plaintiffs do not explain how they relied on that misrepresentation to their detriment. Therefore, defendants' motion to dismiss plaintiffs' claim of fraud is GRANTED as to fraud in the inception of the loans and in regard to loan modification, but DENIED as to the Conversion Option.

**4. Negligence**

Plaintiffs' fifth cause of action is for negligence. As a preliminary matter, the court notes that, as with the fraud claim, the only remaining basis upon which to bring the claim is the alleged breach of contract concerning the Conversion Option because claims based upon allegations concerning the origination of the loans are time-barred.

1    Under California law, the elements of a claim for negligence
2    are that: (1) defendant had a legal duty to plaintiff, (2)
3    defendant breached this duty, (3) defendant was the proximate and
4    legal cause of plaintiff's injury, and (4) plaintiff suffered
5    damage. See Cal. Civ.Code § 1714; Ladd v. County of San Mateo, 911
6    P.2d 496, 498 (1996). Plaintiffs argue that World Savings,
7    Wachovia, and now Wells Fargo, "owed a duty of care to [p]laintiffs
8    to exercise reasonable skill and care in the exercise of the agency
9    duties for the [p]laintiffs' benefit and best interest and to
10   perform as brokers of loans in such a manner as to not cause
11   [p]laintiffs harm." FAC ¶ 161.

12       **a. Lenders Duty of Care to Borrowers**

13   Defendant argues that, as a lender, it did not owe the
14   Plaintiff a duty of care. Defs.' Mem. at 2:26-28. The court rejects
15   defendant's argument that a lender never owes a duty of care to a
16   borrower. California courts have stated that "as a general rule,
17   a financial institution owes no duty of care to a borrower when the
18   institution's involvement in the loan transaction does not exceed
19   the scope of its conventional role as a mere lender of money."
20   Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089,
21   1096, 283 Cal. Rptr. 53 (1991). Applying this rule, the court in
22   Nymark granted summary judgment to the defendant on a claim that
23   the defendant lender had acted negligently in appraising the
24   borrower's collateral to determine if it is adequate security for
25   a loan refinancing the borrower's mortgage, as the court concluded
26   as a matter of law that no duty of care existed with respected to

1  the appraisal. Id. at 1096; see also Wagner v. Benson, 101 Cal.

2  App. 3d 27, 36 (1980) (a lender has no duty to ensure that a

3  borrower will use borrowed money wisely).

4      The court understands Nymark to be limited in two ways. First,

5  a lender may owe a duty of care to a borrower when the lender's

6  activities exceed those of a conventional lender. The Nymark court

7  noted that the "complaint does not allege nor does anything in the

8  summary judgment papers indicate, that the appraisal was intended

9  to induce plaintiff to enter into the loan transaction or to assure

10 him that his collateral was sound." Id. at 1096-97. Nymark thereby

11 implied that had such intent been present, the lender may have had

12 a duty to exercise due care in preparing the appraisal. See also

13 Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a

14 borrower for negligence arises only when the lender actively

15 participates in the financed enterprise beyond the domain of the

16 usual money lender.").

17     Second, even when a lender's acts are confined to their

18 traditional scope, Nymark announced only a "general" rule. Rather

19 than conclude that no duty existed per se, the Nymark court

20 determined whether a duty existed on the facts of that case by

21 applying the six-factor test established by the California Supreme

22 Court in Biakanja v. Irving, 320 P.2d 16 (1958). Nymark, 231 Cal.

23 App. 3d at 1098; see also Glenn K. Jackson Inc. v. Roe, 273 F.3d

24 1192, 1197 (9th Cir. 2001). This test balances six non-exhaustive

25 factors:

26          [1] the extent to which the transaction was intended to

1          affect the plaintiff, [2] the foreseeability of harm to

2          him, [3] the degree of certainty that the plaintiff

3          suffered injury, [4] the closeness of the connection

4          between the defendant's conduct and the injury suffered,

5          [5] the moral blame attached to the defendant's conduct,

6          and [6] the policy of preventing future harm.

7    Roe, 273 F.3d at 1197 (quoting Biakanja, 49 Cal. 2d at 650

8    (modification in Roe). Although Biakanja reasoned that this test

9    determines "whether in a specific case the defendant will be held

10   liable to a third person not in privity" with the defendant, 49

11   Cal. 2d at 650, Nymark held that this test also determines "whether

12   a financial institution owes a duty of care to a borrower-client"

13   231 Cal. App. 3d at 1098. Applying these factors to the specific

14   factors in that case, the Nymark court assumed that plaintiff

15   suffered an injury, but held that the remaining factors all

16   indicated against finding a duty of care. Id. at 1098-1100.

17   In Roe, the Ninth Circuit noted that the California Supreme

18   Court arguably limited Biakanja in Bily v. Arthur Young & Co., 3

19   Cal. 4th 370, 11 Cal. Rptr. 2d 51, 834 P.2d 745 (1992), which held

20   that a court must consider three additional factors before imposing

21   a duty of care. Roe, 273 F.3d at 1198. Roe summarized these factors

22   as "(1) liability may in particular cases be out of proportion to

23   fault (2) parties should be encouraged to rely on their own ability

24   to protect themselves through their own prudence, diligence and

25   contracting power; and (3) the potential adverse impact on the

26   class of defendants upon whom the duty is imposed." Id. (citing

1  <u>Bily</u>, 3 Cal. 4th at 399-405). <u>Bily</u> was decided before <u>Nymark</u>, but

2  not discussed therein.

3  **b. Lender's Allegedly Negligent Acts**

4  Both limitations to the <u>Nymark</u> rule require the court to

5  consider the particular conduct underlying the negligence claim.

6  Here, plaintiffs allege that World Savings, and its successors,

7  "breached their duty . . . as described in paragraphs 126 through

8  166." ¶ 164. These paragraphs include the allegations regarding

9  plaintiffs' attempts to exercise the Conversion Option. ¶¶ 127-28.

10 Based on those allegations, it appears to the court that the <u>Nymark</u>

11 factors favor a finding of a duty of care.

12 Further, under California law, contracts involving the

13 performance of services give rise to a duty of care which requires

14 such services be provided in a competent and reasonable manner, and

15 that causes of action for both breach of contract and tort are

16 permissible in the event the contracts are negligently performed.

17 <u>North American Chemical Co. v. Superior Court</u>, 59 Cal.App.4th 764,

18 773-776 (1997). Here, under the parties' contract, defendant

19 assumed a duty to carry out the conversion of plaintiffs' 2003

20 Refinance from an adjustable rate of interest to a fixed rate of

21 interest when plaintiffs requested to exercise the option under the

22 specified conditions.

23 A finding of a duty of care is insufficient for plaintiffs'

24 claim to survive dismissal, however, because plaintiffs allegation

25 concerning defendant being the "proximate and legal cause of

26 plaintiff's injury," <u>Ladd v. County of San Mateo</u>, 911 P.2d 496, 498

(1996), states only that defendant, and its successors, "directly and proximately caused injury to [p]laintiffs." ¶ 165. The allegation is conclusory, and, thus, fails to meet Rule 8 pleading requirements. Therefore, plaintiffs' claim for negligence based on defendants' alleged breach of contract is DISMISSED and plaintiffs are GRANTED leave to amend to state the injury caused by the defendant's alleged breach of duty with respect to the Conversion Option.

**5. Declaratory Relief Regarding Plaintiff's Right to Rescission**

Plaintiffs' purported claim for "declaratory relief" is a remedy, not a cause of action. Nonetheless, the court will address what appears to be the underlying claim for which the plaintiffs' seek declaratory relief: rescission based on fraud in the inception of the loans.

Insofar as plaintiffs are claiming a right to rescind due to fraud, plaintiffs' claim fails in two respects. First, the court has determined that plaintiffs' claims concerning loan origination are time-barred. Therefore, any claims regarding the HELOC have been dismissed and are no longer at issue. As to the 2003 Refinance and plaintiffs' assertion that a declaration is necessary to ascertain the parties' rights before the property at issue is sold at a foreclosure sale, the court notes that, even if it were ultimately determined that plaintiffs have a right of rescission as to the 2003 Refinance, that determination would have no bearing on plaintiffs' ability to prevent the foreclosure because the deed of trust that is being foreclosed is that of the HELOC. Defs.' Mem.

1 at 2:11-14.

2      Second, Cal. Civ. Code section 1989(b) allows a party to a

3 contract to rescind where: (1) consent was obtained by mistake,

4 through duress, menace, fraud, or undue influence exercised by or

5 with the connivance of the adverse party; (5) where the contract

6 is "unlawful for causes which do not appear in its terms or

7 conditions, and the parties are not equally at fault"; or (6) where

8 the public interest will be prejudiced by permitting the contract

9 to stand. A party seeking to rescind is required to give notice of

10 his or her intent to rescind and "[r]estore to the other party

11 everything of value which he has received from him under the

12 contract or offer to restore the same upon condition that the other

13 party do likewise." Cal. Civ. Code § 1691. The statute provides

14 that when either notice of rescission has not been provided or

15 restoration made, "the service of a pleading in an action or

16 proceeding that seeks relief based on rescission shall be deemed

17 to be such notice or offer or both." Cal. Civ. Code § 1691.

18      Courts in California continually treat tender or at least the

19 allegation of ability to do so as a necessary part of a valid claim

20 for rescission of a contract. See, e.g., Periquerra v. Meridas

21 Capital, Inc., No. 09-4748, 2010 WL 395932, at *3 (N.D. Cal. Feb.

22 1, 2010) (Armstrong, J.) ("Plaintiffs must allege that they are

23 willing to tender the loan proceeds to the lender. This is a basic

24 tenet of California contract law."); Ritchie v. Cmty Lending Corp.,

25 No. 09-02484, 2009 WL 2581414, at *3 (C.D. Cal. Aug.12, 2009)

26 (Pregerson, J.) ("[I]t is a 'basic rule' that '[a]n offer of

1  performance is of no effect if the person making it is not able and
2  willing to perform according to the offer.") ( quoting Cal. Civ.
3  Code § 1495 (2003)). The rationale proceeds from the language of
4  the statute, which requires that a party "[r]estore to the other
5  party everything of value which he has received from him under the
6  contract or offer to restore the same ...." Cal. Civ. Code § 1691
7  (emphasis added). Accordingly, it seems clear that plaintiffs must
8  at least allege that they have offered to tender to support a claim
9  for equitable rescission under section 1691. Plaintiffs have not
10 so alleged, and, therefore, have not adequately pled a claim for
11 state law rescission. Therefore, this court dismisses their
12 petition for declaratory relief with leave to amend.

13 **6. Violation of Business and Professions Code § 17200 et seq.**

14      California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
15 Code § 17200, proscribes "unlawful, unfair or fraudulent" business
16 acts and practices. The California Supreme Court has held that
17 section 17200 "defines 'unfair competition' very broadly, to
18 include 'anything that can properly be called a business practice
19 and that at the same time is forbidden by law.'" Farmers Ins. Exch.
20 v. Superior Court, 826 P.2d 730, 742 (1992) (internal citations
21 omitted). "By proscribing 'any unlawful' business practice, section
22 17200 'borrows' violations of other laws and treats them as
23 unlawful practices that the unfair competition law makes
24 independently actionable." Cel-Tech Communications, Inc. v. Los
25 Angeles Cellular Tel. Co., 973 P.2d 527, 539-40 (1999) (internal
26 quotation marks omitted). Thus, the viability of a UCL claim

25

depends on the viability of an underlying claim of unlawful conduct. <u>Ingels v. Westwood One Broadcasting Servs.</u>, Inc., 129 Cal. App.4th 1050, 1060 (2005).

Here, plaintiffs' premise their UCL claim on the viability of their fraud and negligence claims. FAC ¶¶ 173-74. Plaintiffs also aver defedants' alleged violation of the Rosenthal Act and illegal foreclosure activities, which they have not raised as causes of action in the FAC, as bases for the UCL claim. ¶ 171. Plaintiffs have not pled adequately their causes of action for negligence, wrongful foreclosure, or violation of the Rosenthal Act. However, plaintiffs have met the pleading requirements for their fraud claim. Therefore, defendants' motion to dismiss the UCL claim will be DENIED.

**7. Accounting**

Plaintiffs final claim alleges that defendants owe them an unknown amount of money which cannot be determined without an accounting. FAC ¶ 173. "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." <u>Teselle v. McLoughlin</u>, 92 Cal. Rptr. 3d 696, 715 (2009). However, plaintiffs fail to state the basis for the argument that defendants owe them an uncertain sum of money. Instead, plaintiffs simply incorporate "all allegations of the complaint" and leave the court to determine the basis for the accounting. The complaint is thirty-four pages long and consists

1   of 180 numbered paragraphs. Plaintiff's shotgun incorporation of

2   allegations by reference fails to provide a basis for the

3   accounting. Therefore, the claim must be dismissed with leave to

4   amend.

5                        **IV. CONCLUSION**

6        For the reasons stated above, defendants' motion to dismiss,

7   Doc. No. 20, the court ORDERS as follows:

8        [1] Defendant's motion to dismiss the claims regarding loan

9   origination is GRANTED.

10       [2] Defendant's motion to dismiss the claims related to the

11  conversion option in the 2003 Refinance Loan is DENIED.

12       [3] Plaintiffs are GRANTED leave to amend their complaint to

13  state the injury caused by defendant's alleged negligence with

14  respect to the Conversion Option.

15       IT IS SO ORDERED.

16       DATED:  December 21, 2010.

17

18

19

20                                  LAWRENCE K. KARLTON
                                    SENIOR JUDGE
21                                  UNITED STATES DISTRICT COURT

22

23

24

25

26

                                    27