UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL TAHENY, et al.,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., et al.,

Defendants.

/

NO. CIV. S-10-2123 LKK/EFB

O R D E R

Plaintiffs' second amended complaint ("SAC"), filed on January 21, 2011, alleges seven causes of action related to the foreclosure of plaintiffs' home. ECF No. 34. The home is currently the subject of a preliminary injunction that prohibits the defendants from foreclosing on the home until further order of the court. ECF No. 26. Defendants now move to strike the portions of the second amended complaint that relate to punitive damages. For the reasons stated below, defendant's motion to strike is DENIED.

## I. Background[1]

Plaintiffs own and live in the home at 2366 Telegraph Hill Drive, El Dorado Hills, CA. In August 2003, plaintiffs refinanced their mortgage on that property with defendant World Savings. The new loan was an adjustable-rate mortgage ("ARM") with a "Conversion Option" provision that would allow the plaintiffs to convert the loan to a fixed-rate mortgage when specified conditions were met. Plaintiffs assert that they relied on the availability of the Conversion Option in deciding to enter into the 2003 refinance agreement.

In September 2005, plaintiffs executed a Home Equity Line of Credit ("HELOC") loan with World Savings. The HELOC loan amount was $200,000. Plaintiffs assert that they relied on the availability of the Conversion Option when deciding to obtain the HELOC. A World Savings representative suggested to plaintiffs that they use the HELOC to make mortgage payments until they could exercise the Conversion Option.

On or about July 2007, the plaintiffs followed the instructions in their loan documents to initiate the Conversion Option. Upon doing so, they discovered that the customer service phone number was no longer operational. Thereafter they called

---

[1] On December 22, 2010 this court dismissed, as time barred, all claims relating to loan origination, but declined to dismiss the claim relating to a conversion option clause in the 2003 Refinance Agreement between plaintiff and the bank defendants. Accordingly, this section contains only the factual and procedural background relevant to the claims surrounding the Conversion Option.

World Savings directly in order to obtain information about how to exercise the Conversion Option. Of the several representatives they spoke to, none were able to explain to plaintiffs how to exercise the Conversion Option. Approximately one year later, after World Savings was taken over by Wachovia,[2] plaintiffs attempted to exercise the Conversion Option by contacting Wachovia.

Rather than instructing plaintiffs on how to exercise the Conversion Option, Wachovia representatives told plaintiffs that they could not exercise the option and told them instead to apply to refinance their loans and pay a $95 application fee. Plaintiffs paid the fee and submitted the refinance application. They were subsequently contacted by Brad McGirt, a representative of Wachovia. McGirt instructed the plaintiffs to submit income documents for verification and stated that plaintiffs could refinance into a 30-year fixed-rate loan at 4.85%. McGirt told plaintiffs that those terms were "locked." Plaintiffs submitted their income documents to McGirt but never heard from him again, despite their efforts to make contact with him. Later, plaintiffs learned that Wachovia did not have any record of their application documents or the $95 fee.

In February 2009, plaintiffs were told again by Wachovia that they could not exercise the Conversion Option, and further that

[2] Defendant Wachovia became the successor-in-interest to World Savings and Golden West when it took those banks over on or about May, 2006. Defendant Wells Fargo, N.A., is successor by merger to Wachovia Mortgage, FSB, which was formerly known as World Savings Bank, FSB. Def.'s Mot. to Dismiss, November 3, 2010, ECF No. 24.

they could not refinance on the terms promised by McGirt. A Wachovia representative suggested that plaintiffs seek a loan modification. Wachovia representatives informed plaintiffs, however, that in order to be eligible for a loan modification plaintiffs would need to be in default on their mortgage for a minimum of two months. Up to that point, plaintiffs had never missed a mortgage payment. Following the advice of the Wachovia agent, plaintiffs skipped two payments. Plaintiffs then contacted Wachovia to ask whether they should start making payments again and to request the amount required in order to make their account current. In June 2009, Plaintiffs were informed that their account had already been transferred to the bank's foreclosure department, that plaintiffs therefore could not simply make their account current by making payments.

On April 16, 2009 a Notice of Default was recorded on plaintiffs home by NDEX West, LLC. Plaintiffs filed suit in state court, and the action was removed to this court on August 5, 2010 on the basis of diversity. In their original complaint, plaintiffs alleged multiple claims relating to loan origination that occurred outside of the statute of limitations period. On December 22, 2010, this court dismissed the time-barred claims relating to loan origination, but not the claims relating to the Conversion Option. Plaintiffs have sought and received a preliminary injunction that prohibits the defendants from foreclosing on their home until further notice of the court.

In the operative Second Amended Complaint, plaintiffs state

seven causes of action relating to the Conversion Option: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) breach of fiduciary duty; (5) negligence; (6) violation of Business and Professions Code § 17200 et seq.; (7) action for an accounting. Plaintiffs request several forms of relief including compensatory, statutory, and punitive damages.

Defendants now move to strike the portions of the complaint that relate to punitive damages.

**II. Standard for a Rule 12(f) Motion to Strike**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." A party may bring on a motion to strike within 21 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so. See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d 1380.

A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* by 510 U.S. 517 (1994). A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question. Id. Redundant matter is defined as allegations that "constitute a needless repetition of other averments or are foreign to the issue." Thornton v.

Solutionone Cleaning Concepts, Inc., No. 06-1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007), citing Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380; see also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985). However, granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues. Fantasy, 984 F.2d at 1527-28.

If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010); see also 5A Wright & Miller, supra, at 1380. Whittlestone emphasized the distinction between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law. Id. at 976.

> "Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure." Whittlestone, Inc. v. Handi-Craft Co., See also Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of

a complaint." (Citation omitted)). Id. at 974.

Whittlestone reasoned that Rule 12(f) motions are reviewed for abuse of discretion, whereas 12(b)(6) motions are reviewed de novo. Id. Thus, if a party seeks dismissal of a pleading under Rule 12(f), the district court's action would be subject to a different standard of review than if the district court had adjudicated the same substantive action under Rule 12(b)(6). Id.

**III. Analysis**

Defendants argue that plaintiffs' request for punitive damages should be stricken because the facts alleged in the SAC are insufficient to show that plaintiffs are entitled to punitive damages. Defendants say that plaintiffs have not met the requirements set forth in Cal. Civ. Code § 3294(b) for punitive damages against a corporate employer for the conduct of its employees, and because plaintiffs have not properly alleged that the defendants acted with malice, oppression, or fraud.

California law provides for punitive damages for the breach of an obligation not arising from contract where the plaintiff proves that defendant is guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). A plaintiff may only collect punitive damages against an employer for acts of its employees when "the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). Further,

"with respect to a corporate employer," such as the defendants in this case, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Id.

Section 3294(b) is a pleading requirement. See Scannell v. County of Riverside, 152 Cal. App. 3d 596, 416 (1984)(defendant's motion to strike exemplary damages should have been granted when plaintiff had "not pleaded that acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation."); McMurray v. Merck & Co., 2007 U.S. Dist. LEXIS 39098 (N.D. Cal. May 17, 2007)(Cheney)(granting a motion to strike punitive damages when "Plaintiff has failed to plead the allegedly wrongful conduct was authorized or ratified by an officer, director or managing agent of defendant.").

In state court, plaintiffs must plead facts to support the conclusion that the defendant acted with malice, fraud, or oppression in order to state a claim for punitive damages under § 3294. See Smith v. Superior Court, 10 Cal. App. 4th 1033, 1041 (1992)(dismissing a claim for punitive damages when the complaint was "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice"). However, "section [3294] is a state procedural rule not implicated here" in federal court. Bledea v. Indymac Fed. Bank, 2010 U.S. Dist. LEXIS 23391 (E.D. Cal. Feb. 25, 2010)(Karlton). In this action, the

pleading standard in this case is governed by the Federal Rules of Civil Procedure. "Although Section 3294 provides the governing substantive law for punitive damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure--the provisions governing the adequacy of pleadings in federal court." Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000)(Wheelan). Under Fed. Rule. Civ. P. 9(b), "malice, intent, knowledge, and other conditions of the mind may be alleged generally." Id. In this circuit, plaintiffs need not plead "any particularity in connection with an averment of intent, knowledge or condition of the mind." In re GlenFed Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). Thus, "in federal court, a plaintiff may include a "short and plain" prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." Clark, 106 F. Supp. 2d at 1019. See also Somera v. Indymac Fed. Bank, FSB, 2010 U.S. Dist. LEXIS 19256 (E.D. Cal. 2010)(Damrell)("Under federal pleading standards, defendant's argument that plaintiff must plead specific facts to support allegations for punitive damages is without merit.").

Defendants argue that plaintiffs have failed to properly plead punitive damages against Wells Fargo and that all language in the SAC that refers to the punitive damages claim should be stricken from the complaint. Although defendants don't state how, precisely, their motion to strike meets the standard from Fed. R. Civ. P. 12(f), defendants appear to assert that the language that they

request to be stricken is immaterial or impertinent. This position is inconsistent with Whittlestone, in which the Ninth Circuit held that a claim for consequential damages could not be stricken as immaterial or impertinent under Rule 12(f): “The claim for damages is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief. . .the claim for damages is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged.” Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. Cal. 2010)(internal citations omitted). Like the Whittlestone defendants, the defendants in this case appear to be attempting to use Rule 12(f) for a purpose better suited to a Rule 12(b)(6) motion to dismiss. This is impermissible, as “Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.” Whittlestone, 618 F.3d at 974-75.

In this case, plaintiffs have pled several non-contract claims for which they may be entitled to punitive damages if the elements of § 3294 are met. In the SAC, plaintiffs alleged “defendants consented, acquiesced, approved and ratified the behavior and conduct of its employees . . . in causing harm to plaintiffs.” SAC 18:28-19:2. Plaintiffs further alleged that defendants acted “maliciously, fraudulently, and oppressively.” SAC 14:18-19.

Plaintiffs’ prayer for punitive damages, and the facts alleged in support of that prayer for relief are neither “redundant, immaterial, impertinent, or scandalous,” and defendants’ motion to

strike portions of the complaint, ECF No. 41, is DENIED.

IT IS SO ORDERED.

DATED: April 15, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT