UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL TAHENY, et al.,

      Plaintiffs,

   v.

WELLS FARGO BANK, N.A.,
et al.,

      Defendants.

_____/

NO. CIV. S-10-2123 LKK/EFB

O R D E R

**I.  SUMMARY**

    This court re-affirms its decision in <u>Guinto v. Wells Fargo Bank, N.A.</u>, Civ. S-11-372-LKK, 2011 WL 4738519 (E.D. Cal. October 5, 2011).  <u>Guinto</u> found that <u>American Surety Co. v. Bank of California</u>, 133 F.2d 160, 162 (9th Cir. 1943), is binding, Ninth Circuit authority holding that a national bank is a citizen of the state where it has its principal place of business.  Under the authority of <u>American Surety</u>, Wells Fargo is a citizen of California, and under the authority of <u>Wachovia Bank v. Schmidt</u>,

////

////

1

1  546 U.S. 303 (2006), Wells Fargo is a citizen of South Dakota.[1]

2  Since complete diversity is lacking (plaintiffs share Wells Fargo's

3  California citizenship), and there is no other basis for asserting

4  federal jurisdiction, this case will be remanded to the state court

5  pursuant to 28 U.S.C. § 1447(c), for lack of federal jurisdiction.

6  **II.  BACKGROUND**

7      **A.    Defendants Remove This Lawsuit to Federal Court.**

8      On August 5, 2010, defendants Wachovia Mortgage ("a division

9  of Wells Fargo Bank, N.A."), and Golden West Savings Association

10  Service Co. removed this state breach of contract action to federal

---

12     [1] The court is aware that after Schmidt, district courts
within the Ninth Circuit have reached conflicting decisions on
Wells Fargo's citizenship.

14  Some courts have held that a national bank is a citizen exclusively
where its main office is located. Sami v. Wells Fargo Bank, 2012
15  WL 967051 at *3 (N.D. Cal. 2012) (Mag. J.); Flores v. Wells Fargo
Bank, N.A., 2012 WL 832546 (N.D. Cal. 2012) (Mag. J.); Mireles v.
16  Wells Fargo Bank, N.A., ___ F. Supp.2d ___, 2012 WL 84723 (C.D.
Cal. 2012); Moreno v. Wells Fargo, 2011 WL 6372637 (N.D. Cal. 2011)
17  (Mag. J.); Marzette v. Provident Sav. Bank, FSB, 2011 WL 5513556
(E.D. Cal. 2011) (Mendez, J.); McNeely v. Wells Fargo Bank, N.A.,
18  2011 WL 5320997 (C.D. Cal. 2011); Silva v. Wells Fargo Bank NA,
2011 WL 2437514 (C.D. Cal. 2011); Tse v. Wells Fargo Bank, N.A.,
19  2011 WL 175520 (N.D. Cal. 2011); California ex rel. Bates v.
Mortgage Electronic Registration Systems, Inc., 2010 WL 2889061
20  (E.D. Cal. 2010) (Burrell, J.); DeLeon v. Wells Fargo Bank, N.A.,
729 F. Supp.2d 1119 (N.D. Cal. 2010).

22  Others, including this court in Guinto, have held that the bank is
also a citizen of the state of its principal place of business.
23  Rouse v. Wachovia Mortgage, FSB, 2012 WL 174206 (C.D. Cal. 2012),
notice of appeal filed, 11-CV-928 (Dkt. No. 46); McCrady v. Wells
24  Fargo Bank, N.A., 2011 WL 6009966 (C.D. Cal. 2011); Uriarte v.
Wells Fargo Bank, N.A., 2011 WL 5295285 (S.D. Cal. 2011); Goodman
25  v. Wells Fargo Bank, NA, 2011 WL 2472044 (C.D. Cal. 2011);
Gutterman v. Wachovia Mortgage, 2011 WL 2633167 (C.D. Cal. 2011);
26  Saberi v. Wells Fargo Home Mortgage, 2011 WL 197860 (S.D.
Cal. 2011).

1    court.  Dkt. No. 1.  In this court, plaintiffs ultimately filed a

2    Second Amended Complaint,[2] naming Wells Fargo Bank, N.A. ("Wells

3    Fargo" or "the bank"), and Golden West Savings Association Service

4    Co. as the only defendants.

5        In their Notice of Removal, defendants assert that this court

6    has diversity jurisdiction over this removed action.  They say that

7    plaintiffs are citizens of California,[3] and that Wells Fargo is a

8    citizen exclusively of South Dakota, the location of its "main

9    office."[4]

10   _____

11       [2] The Second Amended Complaint alleges breach of contract,
     breach of the covenant of good faith and fair dealing, breach of
12   fiduciary duty, negligence and violation of the California Business
     and Professions Code, and it seeks an accounting.  There are no
13   federal claims.

14       [3] In their state court complaint, plaintiffs allege that their
     principal dwelling is in El Dorado Hills, California.  In this
15   Circuit, that appears to be at least prima facie evidence of
     California citizenship:
16
         [A] natural person's state citizenship is ... determined
17       by her state of domicile, not her state of residence.
         A person's domicile is her permanent home, where she
18       resides with the intention to remain or to which she
         intends to return.
19
20   Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).

21       [4] According to defendants, Golden West's citizenship does not
     matter because that entity was fraudulently joined.  "Fraudulent
22   joinder" is "a term of art," not an accusation of actual fraud, see
     Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.), cert.
23   denied, 525 U.S. 963 (1998).  A defendant may remove a civil action
     that alleges claims against a non-diverse defendant when the
24   plaintiff has no basis for suing that defendant, or in other words,
     when that defendant has been fraudulently joined.  McCabe v.
25   General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  Because
     the court finds that diversity jurisdiction is lacking, based on
26   Wells Fargo's citizenship, it is not necessary for the court to
     address the fraudulent joinder issue.

**B.   Diversity Jurisdiction and <u>Guinto</u>.**

This court has an obligation to examine its own subject matter jurisdiction.[5]  In <u>Guinto</u>, this court dismissed out all the federal claims and thereupon ordered the parties to show cause why the matter should not be remanded back to the state court.

In that case, Wells Fargo argued that it was a citizen of South Dakota, where it maintained its "main office," that it was not a citizen of California (which it has admitted in other proceedings, is its "principal place of business"), and therefore, it argued, it was diverse from the California plaintiffs.  The bank's arguments relied upon: 28 U.S.C. § 1348, which states that a national bank is a citizen of the state where it is "located;" <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303 (2006), which held that a national bank is located in the state where it maintains its "main office;" <u>Lowdermilk v. U.S. Bank National Ass'n</u>, 479 F.3d 994, 997 (9th Cir. 2007), which holds that the national bank in that case was a citizen where it had its main office, citing <u>Schmidt</u>; and non-binding cases, some of which interpreted <u>Schmidt</u> to mean that a national bank was a citizen of <u>only</u> the state where it had its

---

[5] This obligation arises equally in removed cases:

> by whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements. That obligation is equally applicable to cases initially filed in federal court and cases removed from state court to federal court.

<u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 593 (2004) (some citations omitted).

4

1   main office, and others which interpreted the case as permitting

2   dual citizenship, namely the bank's home office, and its principal

3   place of business.

4        Wells Fargo did not cite or make any reference to the binding

5   Ninth Circuit case directly on point, American Surety, which held

6   that a national bank is located where it has its principal place

7   of business.  Nor did Wells Fargo cite or make reference to any of

8   the subsequent Ninth Circuit cases that have cited American Surety

9   as authority on where a national bank is "located."  See Bank of

10  California Nat. Ass'n v. Twin Harbors Lumber Co., 465 F.2d 489 (9th

11  Cir. 1972) ("The Bank, for diversity purposes, is a 'citizen' of

12  California"), citing 28 U.S.C. § 1348 and American Surety; U.S.

13  Nat. Bank v. Hill, 434 F.2d 1019, 1020 (9th Cir. 1970) (per

14  curiam), citing American Surety's interpretation of 28 U.S.C.

15  § 1348.[6]

16       This court, however – unlike Wells Fargo – is bound by Ninth

17  Circuit precedent.  Having concluded that the Supreme Court

18  expressly declined to rule on the issue ruled upon by the Ninth

19  Circuit in American Surety – that the bank is located where it has

20  its principal place of business – this court held that for federal

21  diversity jurisdiction purposes, Wells Fargo was a citizen of

22  California,   as   were   plaintiffs,   thus   destroying   diversity

23

24       [6] Nor did Wells Fargo cite to this court's decision in Country
     Nat. Bank v. Mayer, 788 F. Supp. 1136, 1142 n.8 (E.D. Cal. 1992)
25   (Karlton, J.), which noted that "for diversity jurisdiction, a
     national bank is a 'citizen' of the state where it has its
26   principal place of business," citing American Surety.

1  jurisdiction.  Accordingly, after exercising its discretionary

2  authority to "declin[e] to exercise supplemental jurisdiction over

3  the remaining claims" pursuant to 28 U.S.C. § 1367(c)(3), this

4  court remanded the matter to state court.

5      **C.  Wells Fargo's Response to Guinto.**

6      Wells Fargo did not appeal the Guinto decision despite the

7  intra-circuit split it complains about in its brief in this case.[7]

8  It could have done so, since a remand order is appealable when, as

9  in Guinto, it is issued pursuant to 28 U.S.C. § 1367(c):

10      Here the district court clearly identified 28 U.S.C.

11      § 1367(c) as the source of its authority to remand, and

12      explicitly stated that it was declining to exercise

13      supplemental jurisdiction.  In this circuit, "a district

14      court's order remanding pendent state claims on

15      discretionary grounds [is] not pursuant to § 1447(c),"

16      and thus a "district court's discretionary remand of

17      pendent state claims is a reviewable order."

18  California Dept. of Water Resources v. Powerex Corp._, 533 F.3d

19  1087, 1091 (9th Cir. 2008); Carlsbad Technology, Inc. v. HIF Bio,

20  Inc., 556 U.S. 635, ___, 129 S. Ct. 1862, 1867 (2009) (the non-

21  appealability rule of Section 1447(d) does not apply to

22

23  _____

24      [7] Motion To Confirm Subject Matter Jurisdiction (Dkt. No. 58)
    at p.18 [CM/ECF page reference] ("the lower courts should be
25  [hesitant] to create a split of authority on jurisdictional
    questions").  Wells Fargo also did not seek reconsideration, even
    though this court relied on binding Ninth Circuit authority that
26  the bank had not addressed in its briefing.

1 Section 1367(c) discretionary remands).[8]

2     **D.   Post-_Guinto_ Cases.**

3     After _Guinto_, whenever a subsequent case arose before this

4 judge in which _Guinto_ appeared to be relevant (the issue was

5 typically identified in status conference), this court has

6 requested briefing on whether the matter should be remanded

7 pursuant to _American Surety_ and _Guinto_.  See, e.g., _Roberts v._

8 _Wells Fargo Bank, N.A._, 2012 WL 487922 at *1 (E.D. Cal. 2012)

9 (finding, as in _Guinto_, that "Wells Fargo is a citizen of

10 California, and there is no basis for diversity jurisdiction");[9]

11 _Pena v. Wells Fargo Bank NA_, Dkt. No. 17, Civ. S-11-1761-LKK-CKD

12 (E.D. Cal. November 14, 2011) (Order To Show Cause pending).

13     The court in this case requested briefing on whether diversity

14 jurisdiction exists.  Wells Fargo again argues to this court, as

15 it did unsuccessfully in _Guinto_, that under _Schmidt_, it is a

16 citizen only of South Dakota – not California – and therefore the

17 court has diversity jurisdiction over this breach of contract

18 claim.  Wells Fargo now asserts that this court was mistaken to

19 rely on _American Surety_, and that in any event, it should "be

20

21     [8] _See also_, _Quackenbush v. Allstate Ins. Co._, 517 U.S. 706,
711-12 (1996) ("We agree with the Ninth Circuit and the parties
22 that § 1447(d) interposes no bar to appellate review of the remand
order at issue in this case" because the district court's remand
23 order "is not based on lack of subject matter jurisdiction or
defects in removal procedure").
24

25     [9] The court notes that Wells Fargo had no opportunity to
appeal the remand order in _Roberts_, because that case, unlike
26 _Guinto_, was remanded for lack of federal jurisdiction, and thus
review was barred by 28 U.S.C. § 1447(d).

1  [hesitant] to create a split of authority on jurisdictional
2  questions."[10]

3      The court does not wish to encourage Wells Fargo or any other
4  party to seek reconsideration through means other than those
5  provided for in the Local Rules of this District. However, in this
6  case, Wells Fargo addresses American Surety which for some reason
7  it did not address on its first go-round. Accordingly, the court
8  will address each of the bank's arguments in turn.

9  **III. STANDARDS**

10     Civil actions not involving a federal question are removable
11  to a federal district court if there is diversity of citizenship
12  between the parties. 28 U.S.C. § 1332(a)(1). Section 1332
13  requires that there be complete diversity, that is, each
14  plaintiff's citizenship must be diverse as to each defendant's
15  citizenship. Id.

16     On a motion to remand, the removing defendant faces a strong
17  presumption against removal, and bears the burden of establishing
18  that removal was proper by a preponderance of evidence. Sanchez v.
19  Monumental Life Ins. Co., 102 F.3d 398, 403-404 (9th Cir. 1996).
20  Section 1447(c), 28 U.S.C., provides that a case removed from state
21  court "shall be remanded" if it appears that it "lacks subject
22  matter jurisdiction." Federal jurisdiction must be rejected if
23  there is any doubt as to the right of removal. Id. at 566.
24  ////

25  ─────────────

26      [10] Plaintiffs did not respond to the court's request for
    briefing.

8

**IV.   ANALYSIS**

Wells Fargo is a "national banking association" otherwise known as a "national bank." For purposes of diversity jurisdiction:

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

28 U.S.C. § 1348.[11]  Over the years, the courts have struggled over what "located" means in this context.  In general, the courts have split over the following possibilities: (1) where the bank has its "main office;" (2) where the bank has branches; (3) where the bank's "principal place of business" is; and (4) some combination of the prior three.  The statute does not, by its express terms at least, specify which of these possibilities is correct.  Nor does the statute indicate whether a national bank can have only one location, or whether it can be located in two or more of these possible locations, for diversity purposes.

The Supreme Court and the Ninth Circuit have cleared up the mystery to some extent.  It is now clear that a national bank <u>is</u> located where it maintains its "main office."  <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303 (2006).  It is equally clear that a national

---

[11]  The statute's reference to "all other actions," is a reference to an earlier part of the same statute.  That earlier provision grants original jurisdiction to the district courts over civil actions commenced by the U.S. against national banks, and several other types of actions involving national banks.

1  bank's  location  is  <u>not</u>  determined  by  the  state(s)  where  it

2  maintains branches.  <u>Schmidt</u>, 546 U.S. 303; <u>American Surety Co. v.</u>

3  <u>Bank of California</u>, 133 F.2d 160, 162 (9th Cir. 1943).

4      But what of the "principal place of business?"  The Ninth,

5  Fifth and Seventh Circuits, and the Comptroller of the Currency

6  ("the administrator charged with supervision of the National Bank

7  Act"), have all determined that a national bank <u>is</u> a citizen of the

8  state where its principal place of business is, even if it is also

9  a  citizen  of  the  state  where  it  maintains  its  home  office. [12]

10 According to the Ninth Circuit:

11     a logical interpretation of the phraseology of 28 U.S.C.

12     § 41(16) [the predecessor to Section 1348] leads to the

13     conclusion that the "States in which they (national

14     banking  associations)  are  respectively  located"  are

15

16     [12] In an Interpretive Letter, the Comptroller stated:

17     a national bank is a citizen of the state in which its
    principal place of business is located and ... the state
    in which its main office is currently located.

18

19 OCC Interpretive Letter 952, 2002 WL 32072482 (October 23, 2002).
The Ninth Circuit gives "great weight" to such interpretations by
the Comptroller:

20

21     We give "great weight" to any reasonable construction of
    a regulatory statute adopted by the agency charged with

22     its enforcement.  "As the administrator charged with
    supervision of the National Bank Act, the [OCC] bears
    primary responsibility for surveillance of 'the business

23     of banking' authorized by § 24 Seventh." ... The OCC's

24     position  is  reasonable  and  thus  entitled  to  "great
    weight."

25 <u>Bank of America v. City and County of San Francisco</u>, 309 F.3d 551,
563 (9th Cir. 2002), <u>cert. denied</u>, 538 U.S. 1069 (2003) (citations

26 omitted).

1   those states in which their principal places of business

2   are maintained.

3   American Surety, 133 F.2d at 162, aff'g, American Surety Co. of New

4   York v. Bank of California, 44 F. Supp. 81, 83 (D.C. Or. 1941) ("a

5   national bank should be considered as a citizen of the state where

6   it has its principal place of business, irrespective of the fact

7   that it has authorized branches in other states").

8   The Seventh Circuit, citing American Surety, held that:

9   national banks potentially can be citizens of two states

10   for diversity purposes ... a national bank is "located"

11   for purposes of 28 U.S.C. § 1348 in the state where the

12   bank's principal place of business is found and the

13   state listed on its organization certificate.

14  Firstar Bank, N.A. v. Faul, 253 F.3d 982, 989 & n.3 (7th Cir.

15  2001).  The Fifth Circuit, also citing American Surety, held that

16  a national bank was not located where it had branch offices.

17  Rather, it held:

18   We construe section 1348 in light of Congress's intent

19   to maintain jurisdictional parity between national banks

20   on the one hand and state banks and corporations on the

21   other.  We hold that the definition of "located" is

22   limited to the national bank's principal place of

23   business  and the state listed in its organization

24   certificate and its articles of association.

25  Horton v. Bank One, N.A., 387 F.3d 426, 436 (5th Cir. 2004), cert.

26  denied, 546 U.S. 1149 (2006).

Neither the Supreme Court nor the Ninth Circuit, nor any intervening Congressional enactment has ever held or instructed that a national bank is _not_ located in the state of its principal place of business.[13]  Indeed, the Supreme Court had the opportunity to address the issue in _Schmidt_, but expressly declined to do so.

First, in considering where national banks are "established," a term used in a different part of Section 1348, the Court states:

> Given the character of the proceedings covered by the first paragraph of § 1348, see supra, at 948, one might read "established" as referring to the bank's main office as set forth in its articles of association. Other readings mentioned in Court of Appeals opinions are the bank's _principal place of business_ and the place listed in the bank's organization certificate.   See _Horton v. Bank One, N. A._, 387 F.3d 426, 434 (5th Cir. 2004); _Firstar Bank, N.A. v. Faul_, 253 F.3d 982,

---

[13] And, among the circuits, only the the Eighth Circuit has so held.  _Wells Fargo Bank, N.A. v. WMR e-PIN, LLC_, 653 F.3d 702 (8th Cir. 2011).  The court notes that _WMR_ cites _Hicklin Engineering, L.C. v. Bartell_, 439 F.3d 346, 348 (7th Cir. 2006), for the proposition that the Seventh Circuit similarly held that a national bank is a citizen "only" of the state housing its main office.  But in fact, _Hicklin_'s language, similar to the language of _American Surety_, used "only" to exclude branch offices.  It did not read _Schmidt_ to exclude principal place of business:

> until _Wachovia Bank v. Schmidt_ , 546 U.S. 303 (2006), issued six days after this appeal was argued, there was a distinct possibility that national banks would be deemed citizens of every state in which they had offices. But _Wachovia Bank_ held that national banks are citizens only of the states in which their main offices are located.

12

1    992 (7th Cir. 2001). Because this issue is not presented

2    by the parties or necessary to today's decision, we

3    express no opinion on it.  Cf. ibid.

4  Schmidt, 546 U.S. at 315 n.8 (emphasis added).  Later, the Court

5  again refers to the bank's principal place of business without

6  ruling on whether that is a proper basis for determining

7  citizenship:

8    To achieve complete parity with state banks and other

9    state-incorporated entities, a national banking

10   association would have to be deemed a citizen of both

11   the State of its main office and the State of its

12   principal place of business.  See Horton, 387 F.3d, at

13   431, and n. 26; Firstar Bank, N. A., 253 F.3d, at

14   993-994.  Congress has prescribed that a corporation

15   "shall be deemed to be a citizen of any State by which

16   it has been incorporated and of the State where it has

17   its principal place of business." 28 U.S.C.

18   § 1332(c)(1) (emphasis added).  The counterpart

19   provision for national banking associations, § 1348,

20   however, does not refer to "principal place of

21   business"; it simply deems such associations "citizens

22   of the States in which they are respectively located."

23   The absence of a "principal place of business" reference

24   in § 1348 may be of scant practical significance for, in

25   almost every case, as in this one, the location of a

26   national bank's main office and of its principal place

13

1    of business coincide.

2    _Schmidt_, 546 U.S. at 317 n.9.

3        **A.   Is _American Surety_ Irreconcilable with _Schmidt?_**

4        Wells Fargo argues that _American Surety_ is irreconcilable with

5    the intervening Supreme Court authority of      _Wachovia Bank v._

6    _Schmidt_, 546 U.S. 303 (2006).  The bank is correct that "where

7    intervening Supreme Court authority is clearly irreconcilable with

8    ... prior circuit authority, ... a three-judge panel of this court

9    and  district  courts  should  consider  themselves  bound  by  the

10   intervening higher authority and reject the prior opinion of this

11   court as having been effectively overruled."  _Miller v. Gammie_, 335

12   F.3d 889, 900 (9th Cir. 2003) (en banc).

13       However, Wells Fargo's argument is premised upon its assertion

14   that " _American Surety_ and _Schmidt_ both held for _single_, _but_

15   _different_, standards for citizenship.  Using the PBB [principal

16   place  of  business]  test  to  the  exclusion  of  main  office,  as

17   _American Surety_ had in 1943, is simply irreconcilable with

18   _Schmidt_."  Dkt. No. 58 at p.9 (emphasis in text).    The bank's

19   premise is doubly false: (1) _American Surety_ did not use the

20   principal place of business test "to the exclusion" of the main

21   office test of _Schmidt_; and (2) _Schmidt_ did not use the main office

22   test "to the exclusion" of the principal place of business test of

23   _American Surety_, _Horton_, and _Firstar Bank_.

24       Instead, _Schmidt_ and _American Surety_ each identify a different

25   possibility for citizenship – main office or principal place of

26   business – without excluding the other possibility.  Since this is

                                    14

1  a district court which is bound both by the Ninth Circuit and by

2  the Supreme Court, _Guinto_ accepted _both_ possibilities for

3  citizenship since they were not in conflict.

4      It is true that _American Surety_ stated: "The trial court was

5  right in holding that defendant is a citizen _only_ of the state in

6  which its principal place of business is located, the State of

7  California." _American Surety_, 133 F.2d at 162 (emphasis added).

8  But that "only" does not mean to the exclusion of the state where

9  the bank has its main office – also California.[14]  "Only" means to

10 the exclusion of the other state proposed for citizenship in that

11 case, namely Oregon, where the bank had its branch offices.

12     As this court stated in _Guinto_, and as Wells Fargo asserts

13 here, both _Schmidt_ and _American Surety_ were faced with the exact

14 same question: is a national bank a citizen of every state where

15 it maintains a branch office?  Both cases answered "No."  _Schmidt_

16 said national banks are citizens of the state where they maintain

17 their "main office," not everywhere they maintain branch offices.

18 _American Surety_ said that Bank of America (a national bank) was a

19 citizen of the state where it had its principal place of business

20 – California – not everywhere it had branch offices, without

21 addressing whether it was also a citizen of the state where it had

22 its "main office" (also California).

23     This is clear from the district court decision in _American_

24

25     [14] In fact, it would not make sense for _American Surety_ to say
   (or intend) that the bank was located only in California, where it
26 had its principal place of business, but was not located in
   California, where it had its main office.

1  <u>Surety</u>, which held: "a national bank should be considered as a
2  citizen of the state where it has its principal place of business,
3  <u>irrespective of the fact that it has authorized branches in other</u>
4  <u>states</u>."   <u>American Surety Co. of New York v. Bank of California</u>,
5  44 F. Supp. 81, 83 (D.C. Or. 1941) (emphasis added).   And it is
6  also clear from the Ninth Circuit opinion itself:

7        a logical interpretation of the phraseology of 28 U.S.C.
8        § 41(16) [the predecessor to Section 1348] leads to the
9        conclusion that the "States in which they (national
10       banking associations) are respectively located" are
11       those states in which their principal places of business
12       are maintained.   If the Congress had intended to provide
13       that a national banking institution should be given the
14       privilege and should carry the duties of citizenship in
15       various states <u>upon the basis of branch business offices</u>
16       being established therein, it would be a noteworthy
17       departure from the general rule, and more likely than
18       not Congress would have plainly state[d] such intent.

19 <u>American Surety</u>, 133 F.2d at 162 (emphasis added).

20       Thus, both the district court and the Ninth Circuit were
21 contrasting the location of the principal place of business against
22 the location of the branch office, and both determined that the
23 principal place of business was the bank's "location" for purposes
24 of diversity jurisdiction.   Neither decision excluded the "main
25 office" as the bank's location.   In fact, they could not have done
26 so, as the issue never came up, and neither the district court nor

1  the Ninth Circuit ever discussed it.[15]

2      **B.   Should American Surety Be Used To "Supplement" Schmidt?**

3      Wells Fargo next argues that American Surety's "principal

4  place of business" test for national bank citizenship should not

5  be used at all because the case was decided before interstate

6  banking and dual citizenship for corporations "was even possible."

7  Dkt. No. 58 at p. 10.

8      In support of this argument, Well Fargo offers a history

9  lesson.  The bank asserts that interstate banking did not exist

10 before it was authorized by the Riegle-Neal Interstate Banking and

11 Branching Efficiency Act of 1994 ("1994 Interstate Banking Act"),

12 Section 101, 103 Pub. L. 328, 108 Stat. 2338, 2339.  But this is

13 plainly false.  Clearly, there were banks with interstate

14 operations in 1943, even if there was no full-on interstate banking

15 as it exists today, with national banks permitted to open branches

16 in every state of the union.  Most important, the bank in American

17 Surety – Bank of America – was one of the banks with interstate

18

---

19   [15] The court acknowledges that Wells Fargo's interpretation of
     American Surety's use of the word "only," is shared by others.
20   See, e.g. Flores v. Wells Fargo Bank, N.A., 2012 WL 832546 at *3
     (N.D. Cal. 2012) (Mag. J.) (finding that Schmidt abrogated American
21   Surety because "American Surety held that the principal place of
     business rule is the exclusive test for citizenship of national
22   banks for diversity jurisdiction purposes"); Firstar Bank, N.A. v.
     Faul, 253 F.3d 982, 989 & n.3 (7th Cir. 2001) ("we deviate from
23   American Surety ... by concluding that national banks potentially
     can be citizens of two states for diversity purposes," namely, "a
24   national bank is 'located' for purposes of 28 U.S.C. § 1348 in the
     state where the bank's principal place of business is found and the
25   state listed on its organization certificate"); OCC Interpretive
     Letter 952 at pp. 3-4 & p.4 n.10 (October 23, 2002) ( American
26   Surety "took the position that a national bank was located for this
     purpose only in the state of its principal place of business").

1  operations.[16]

2      The Supreme Court is the better source for the history lesson

3  on interstate banking.  From <u>Schmidt</u> itself it can be seen how it

4  came to pass that Bank of America, the defendant in <u>American</u>

5  <u>Surety</u>, was engaged in interstate banking at a time when Wells

6  Fargo thinks such banking did not exist:

7      National banks originally lacked authority to operate

8      branch offices.[17]  In 1865, Congress enacted an exception

9      permitting a state bank that converted to a national

10     bank to retain its pre-existing branches.[18]  Congress

11     authorized limited branch operations in the bank's home

12     State in 1927 and 1933. [19]  These Acts, like the 1865

13     enactment, <u>allowed interstate branching</u> only under

14     narrow "grandfather" provisions.[20]  Not until 1994 did

15     Congress grant national banks broad authority to

16

17

18  _____

19      [16] If it were not, <u>American Surety</u> would never have had to
determine whether Bank of America was a citizen of California, the

20  location of its main office and principal place of business, or of
Oregon, where it maintained branches.

21      [17] Act of Feb. 25, 1863, § 11, 12 Stat. 668.

22      [18] Act of Mar. 3, 1865, § 7, 13 Stat. 484.

23      [19] McFadden Act (Branch Banks), 1927, § 7(c), 44 Stat. 1228;
Glass–Steagall Act, 1933, § 23, 48 Stat. 189–190.

24

25      [20] McFadden Act, § 7(a)-(b), 44 Stat. 1228; <u>see</u> <u>Girard Bank v.</u>
<u>Board of Governors of Fed. Reserve System</u>, 748 F.2d 838, 840 (3rd

26  Cir.  1984) (observing that only two national banks had
"grandfathered" interstate branches).

1    establish branch offices across state lines.[21]

2  Schmidt, 546 U.S. at 307 n.2 (citations converted into footnotes)

3  (emphasis added).  Thus, even though broad, full-on interstate

4  banking legislation did not arrive until 1994, the national bank

5  in American Surety was engaged in interstate banking.[22]

6    In any event, the bank then concludes – based upon its belief

7  that interstate banking did not exist in 1943 – that at the time

8  American Surety was decided, "a national bank's PPB [principal

9  place of business] and main office had to be in the same state."

10  Dkt. No. 58 at p.10 (emphasis added).  But this is yet another

11  faulty conclusion, based as it is on the false premise that Bank

12  of America was not engaged in interstate banking.  The only support

13  Wells Fargo offers for this latter conclusion is – improbably –

14  Guinto, as well as the district court decision in American Surety.

15  In fact, neither case supports the bank's conclusion that the main

16  office "had to be" in the same state as the principal place of

17  business.[23]

18  ────────────────────

19    [21] See Riegle-Neal Interstate Banking and Branching Efficiency
    Act of 1994, § 101, 108 Stat. 2339.  See generally J. Macey, G.
20  Miller, & R. Carnell, Banking Law and Regulation 18–19, 23, 32–33
    (3d ed.2001).

21    [22] Wells Fargo highlights the fact that Bank of America had an
22  interstate branch only because it was "grandfathered in," but it
    does not explain what difference it makes that the interstate
23  banking in American Surety came about as the result of the McFadden
    Act's grandfather clause, rather through the 1994 federal banking
24  legislation.  Both were federal banking enactments that permitted
    the national banks at issue to engage in some form of interstate
25  banking.

26    [23] Both cases point out that in the case of American Surety,
    both places were in the same state, not that they "had to be."

1    Wells Fargo also offers no logic for its conclusion, nor does
2  any present itself.  The fact is that notwithstanding the absence
3  of the 1994 Interstate Banking Act, there was – even in 1943 –
4  federal legislation permitting banks organized under state laws to
5  become national banks and to keep their out-of-state branches.
6  Wells Fargo – which has the burden of establishing diversity
7  jurisdiction here – has identified no provision of those laws that
8  required those banks to ensure that their main office and their
9  principal place of business be in the same state.

10    In any event, from these two faulty, unsupported conclusions,
11  Wells Fargo concludes further that American Surety's identification
12  of "principal place of business" as the bank's location was "a
13  distinction without a difference," that this court should ignore.
14  If Wells Fargo is referring to the distinction between "principal
15  place of business" and "main office," its argument is a non-
16  sequitur, because American Surety never made that distinction.
17  Rather, it distinguished only between the principal place of
18  business and the branch office location.

19    **C.    Has American Surety Been Rendered "Obsolete" in the Age**
20    **of Interstate Banking?**

21    Wells Fargo next argues that Schmidt did not mention American
22  Surety because the 1943 Ninth Circuit decision "is no longer
23  relevant on this issue."  Dkt. No. 58 at p.11.  The bank concedes

24  ─────────────────────
25  Similarly, the Supreme Court pointed out in Schmidt that the bank
   at issue there – the former Wachovia Bank – also had its main
   office and principal place of business in the same place.  But it
26  was not the case in Schmidt either that that situation "had to be."

1  that the Supreme Court did not explain its omission of the Ninth
2  Circuit decision when it stated that there was a split among the
3  circuits.  But the bank guesses that the Court only bothered to
4  mention the cases that are still relevant, that is, those decided
5  after the 1994 Interstate Banking Act.  This court will not guess,
6  as it has no basis for such guesswork.

7        Certainly, it is interesting that the Supreme Court did not
8  mention <u>American Surety</u> in the <u>Schmidt</u> Opinion.  The fact is,
9  <u>American Surety</u> was clearly and unambiguously brought to the
10 attention of the Justices as one of the circuit cases that made up
11 the circuit split on the citizenship of national banks.  The
12 Petition in <u>Schmidt</u> presents the question thus:

13       whether, for purposes of federal diversity jurisdiction,
14       a national banking association is "located" in, and thus
15       deemed to be a citizen of, every state in which the
16       association maintains a branch, as held by the court
17       below, or instead has a more limited citizenship,  <u>as</u>
18       <u>held by three other courts of appeals</u>.

19 <u>Wachovia Bank, Nat. Ass'n v. Schmidt</u>, Petition for Writ of
20 Certiorari, 2005 WL 5440 (March 4, 2005) (emphasis added).  The
21 "three other courts of appeals" set forth in the Petition are the
22 Fifth Circuit (<u>Horton</u>, which held citizenship was determined by
23 "principal place of business" <u>and</u> "main office," the Seventh
24 Circuit (<u>Firstar Bank</u>, which held the same), and the Ninth Circuit
25 (<u>American Surety</u>, which held that citizenship was determined by
26 ////

1    "principal place of business," but was silent on "main office").[24]

2        As for <u>American Surety</u>, the Petition advised the Justices:

3    "Likewise, construing the immediate predecessor to Section 1348,

4    the Ninth Circuit concluded that a national bank should not be

5    deemed a citizen of every state in which it has a branch."   At *6.

6    In setting forth the question it would decide, the Supreme Court

7    stated that it was granting certiorari "to resolve the disagreement

8    among Courts of Appeals on the meaning of § 1348."   <u>Schmidt</u>, 546

9    U.S. at 303, <u>citing</u> <u>Horton</u>, <u>Firstar Bank</u>, <u>Schmidt</u>, and <u>World Trade</u>

10   <u>Center Properties, L.L.C. v. Hartford Fire Ins. Co.</u>, 345 F.3d 154,

11   161 (2nd Cir. 2003).

12       **D.   Has <u>American Surety</u> Been Rendered "Obsolete" Because the**

13       **Ninth Circuit Has "Ignored" it After <u>Schmidt</u>?**

14       Wells Fargo next argues that the Ninth Circuit has not cited

15   <u>American Surety</u> post-<u>Schmidt</u>, despite two opportunities to do so.

16       **1.   <u>Lowdermilk v. U.S. Bank</u>**

17       In <u>Lowdermilk v. U.S. Bank</u>, 2006 WL 4100011 (D. Or. 2006)

18   (unpublished), <u>aff'd</u>, 479 F.3d 994 (9th Cir. 2007), the district

19   court was called upon to determine whether the "jurisdictional

20   amount" had been properly averred in a removed action under the

21   Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119

22   Stat. 4 (2005).   The district court found that the jurisdictional

23   amount allegation was lacking, and accordingly ordered the case

24   ─────────────

25       [24] The case on appeal was <u>Wachovia Bank v. Schmidt</u>, 388 F.3d
     414 (4th Cir. 2004), which had held that a national bank was a
26   citizen of every state where it had branch offices.

1   remanded to the state court.

2        Along the way, however, the district court first considered

3   whether the "minimal diversity" of CAFA had been established.

4   Under CAFA, minimal diversity is met when "any member of a class

5   of plaintiffs is a citizen of a State different from any

6   defendant."  28 U.S.C.A. § 1332(d)(2)(A).  In its Notice of

7   Removal, defendant, a national bank, "properly alleged that at

8   least one member of the class is a citizen of Oregon."  Plaintiff

9   contended that minimal diversity was lacking because defendant U.S.

10  Bank N.A., a national bank, was also a citizen of Oregon, as its

11  principal place of business was there.

12       The district court held:

13       Defendant is a national banking association organized

14       and existing under the National Bank Act.  A national

15       bank "is a citizen of the State in which its main

16       office, as set forth in its articles of association, is

17       located."  Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303

18       (2006).  Defendant's Articles of Association designate

19       its main office as being located in Cincinnati, Ohio.

20       Accordingly, defendant has properly alleged that it is

21       a citizen of Ohio. [¶]  This court finds that defendant

22       has met its burden of alleging minimal diversity as

23       required under CAFA.

24  Lowdermilk, 2006 WL 4100011 at *2.  Thus, although it did not

25  expressly find that defendant was not a citizen of Oregon, where

26  it had its principal place of business, that is the conclusion to

                                  23

1  be drawn from the court's statement.  If the bank were also a

2  citizen of Oregon, then minimal diversity would have been lacking

3  under 28 U.S.C. § 1332(d)(2)(A).

4      The "minimal diversity" finding – and the district court's

5  implicit rejection of the "principal place of business" test for

6  citizenship – were "not contested on appeal." Lowdermilk, 479 F.3d

7  at 997.  However, presumably because subject matter jurisdiction

8  was challenged in the district court, the Ninth Circuit addressed

9  the matter anyway, although very briefly:

10         The questions of minimal diversity and class numerosity

11         are not contested on appeal, and we are satisfied that

12         the evidence supports the district court's decision.

13         With  respect  to  minimal  diversity, Defendant is a

14         citizen of Ohio because its main office is located in

15         that state, Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303

16         (2006),  and  at  least  one  member  of  the  class  is  a

17         citizen of Oregon.

18  Id.  The Ninth Circuit made no mention of the bank's "principal

19  place of business," or the district court's implicit rejection of

20  that test for citizenship.  Most importantly, the Ninth Circuit had

21  no reason to address the issue, because it was "not contested on

22  appeal." Neither the district court nor the Ninth Circuit in

23  Lowdermilk made any mention of American Surety, or the fact that

24  prior Ninth Circuit cases had determined that a national bank's

25  citizenship is

26  ////

1  determined by its "principal place of business."[25]

2      _Lowdermilk_ does not contain a holding on the issue facing this

3  court – whether a national bank is a citizen, not only where it has

4  its main office, but also the state of its principal place of

5  business.  This court would not lightly decline to follow the

6  language of a Ninth Circuit decision, even when it was uttered on

7  an issue that was not contested on appeal, and did not have the

8  benefit of briefing.  However, in this case: (i)  in _Lowdermilk_,

9  there _is_ no Ninth Circuit language relating to the "principal place

10  of business" issue, as that language exists only in the unpublished

11  district court order, which was not contested on appeal; and

12  (ii) if the Ninth Circuit intended to give silent approval to the

13  district court's implicit rejection of the principal place of

14  business test, it was both unnecessary to the court's decision, and

15  made in a casual manner not indicative of a binding ruling,

16  especially one that overrules the considered holding of a prior

17  panel.

18      The mention of "minimal diversity" was completely unnecessary

19  to _Loudermilk_'s decision.  Although the Ninth Circuit presumably

20  wanted to assure itself that the district court had subject matter

21  jurisdiction, that is what the entire appeal was about – whether

22  the plaintiffs properly alleged the jurisdictional amount.  That

23  _____

24      [25] _See_ _Bank of California Nat. Ass'n v. Twin Harbors Lumber_
    _Co._, 465 F.2d 489 (9th Cir. 1972), and _U.S. Nat. Bank v. Hill_, 434

25  F.2d 1019, 1020 (9th Cir. 1970) (per curiam), two Ninth Circuit
    cases that relied on _American Surety_'s determination that a

26  national bank is "located" in the state of its principal place of
    business, in interpreting 28 U.S.C. § 1348.

1  was the <u>only</u> question presented on appeal,[26] and of course, it was

2  itself jurisdictional.  The Ninth Circuit answered the question in

3  the  negative,  thus finding that there was no subject matter

4  jurisdiction.[27]

5      In any event, Wells Fargo does not ask this court simply to

6  follow  the  language  of  <u>Lowdermilk</u>  –  that  a  national  bank  is  a

7  citizen where it maintains its main office.  This court does follow

8  that language, and it is not disputed here – nor could it be after

9  <u>Schmidt</u> – that Wells Fargo is a citizen where it maintains its main

10 office.  Wells Fargo instead asks this court to give meaning to

11 what <u>Lowedermilk</u> did not say, namely the absence of a reference to

12 <u>American Surety</u>.  Since the issue addressed in<u>American Surety</u> was

13 not contested in the <u>Lowdermilk</u> appeal, this court cannot attach

14 significance to this absence.

15 ////

16 _____

17        [26]    In this case we are called upon to resolve a
                  question of first impression: Under the Class
18                Action Fairness Act of 2005 ("CAFA"), Pub. L.
                  109-2, 119 Stat. 4 (2005), when the plaintiff
19                has pled damages less than the jurisdictional
                  amount, what must the defendant prove in order
20                to remove the case to federal court?

21 <u>Lowdermilk</u>, 479 F.3d at 995-96.

22       [27] The  court's  statement  about  the  "main  office"  does  not
   appear  to  qualify  as  an  alternative  holding.   Since the only
23 question presented was whether the jurisdictional amount had been
   alleged, the "minimal diversity" question would become relevant
24 <u>only</u> if the question on appeal was answered in the affirmative.
   That is, only if the court found that the jurisdictional amount had
25 been properly alleged would it matter whether minimal diversity
   existed.   In that event, the Ninth Circuit would hardly have relied
26 upon a ruling from the district court that was not presented on
   appeal, and presumably not briefed on appeal.

1           **2.   Peralta v. Countrywide.**

2       Wells Fargo next cites Peralta v. Countrywide Home Loans,

3  Inc., 375 Fed. Appx. 784 (9th Cir. 2010) (mem.), an unpublished

4  decision.  The bank cites the case not as precedent, it claims, but

5  only for the fact that the case does not mention American Surety.

6  The question posed to the panel was whether defendant, a national

7  bank, was a citizen of California, the state of its principal place

8  of business, in addition to being a citizen of Ohio, where its main

9  office was located.  The unpublished decision states:

10          The issue involves interpretation of the term "located"

11          in 28 U.S.C. § 1348, consideration of § 1348's extensive

12          legislative history, and analysis of the United States

13          Supreme Court's interpretation of § 1348 in Wachovia

14          Bank, N.A. v. Schmidt, 546 U.S. 303 (2006).  The court

15          declines to resolve the complex jurisdictional issue of

16          a national bank's citizenship on a limited record, with

17          abbreviated briefing, and a decisional deadline.

18  Peralta, 375 Fed.Appx. at 785.

19      Wells Fargo somehow interprets this as proof that "the Ninth

20  Circuit no longer considers American Surety to be viable."  Dkt.

21  No. 58 at p.12.  After all, it argues, if  American Surety were

22  binding, the court would simply have cited it as precedent and

23  moved on.  The fact that the court referred to "the complex

24  jurisdictional issue" is proof, says the bank, that American Surety

25  ////

26  ////

1   is dead.[28]

2       The argument is difficult to credit, or even understand.  It

3   seems  extraordinarily unlikely that the Ninth Circuit would

4   overrule its prior, considered, binding decision in American Surety

5   by simply not mentioning that case in a subsequent, unpublished

6   memorandum decision.[29]

7           3.    The Ninth Circuit has not "abandoned" American

8               Surety.

9       Wells Fargo asserts that post-Schmidt, the Ninth Circuit has

10  not cited American Surety.  That appears to be true.  But this

11  court again declines the invitation to read the minds of other

12  judges.  The court does note however, that the Ninth Circuit has

13  not had an opportunity or a need to cite American Surety in a

14  published opinion after Schmidt.

15      In any event, Wells Fargo insinuates that once American Surety

16  was decided, it was never heard from again.  That is not so.  the

17  Ninth Circuit has cited American Surety, together with the current

18  statute, Section 1348, as authority in determining where a national

19  bank is a citizen.

20  _____

21      [28] Wells Fargo's argument also belies its claim that it is not
    citing Peralta as precedent.  The court believes it is improper for
22  Wells Fargo to cite Peralta for anything other than as relevant to
    "the doctrine of law of the case or rules of claim preclusion or
23  issue preclusion."  9th Cir. R. 36-3.

24      [29] In any event, Wells Fargo's argument is not logical.  If
    the Ninth Circuit panel believed that the jurisdictional issue was
25  "complex," one could just as reasonably conclude that the
    complexity arises from the fact that it is Schmidt that is not as
26  simple and dispositive on the "principal place of business" issue
    as Wells Fargo thinks.

1    In <u>Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.</u>,

2  465 F.2d 489 (9th Cir. 1972) ("Twin Harbors"), the Ninth Circuit

3  said:

4       The Bank, for diversity purposes, is a "citizen" of

5       California.  28 U.S.C. § 1348; <u>American Surety Co. v.</u>

6       <u>Bank of California</u>, 9 Cir., 1943, 133 F.2d 160.

7  <u>Twin Harbors</u>, 465 F.2d at 492.[30]  In <u>U. S. Nat. Bank v. Hill</u>, 434

8  F.2d 1019, 1020 (9th Cir. 1970) (per curiam), a venue case, the

9  Ninth Circuit relied upon <u>American Surety</u> to find that a national

10 bank could not be sued in every state where it had brances.    In

11 making its decision on venue, the court noted:

12      In <u>American Surety Co. v. Bank of California</u>, 133 F.2d

13      160 (9th Cir. 1943), our court had the opportunity to

14      define the word "located" as it then appeared in 28

15      U.S.C. 41(16), the predecessor of 28 U.S.C. § 1348.  We

16      held that the national bank involved in that case was

17      "located" only in the state wherein it maintained its

18  _____

19      [30] This case indicates that <u>American Surety</u> was still good
   law, at least as late as 1972.  However, this court acknowledges
20 some ambiguity in the <u>Twin Harbors</u> decision.  The determination
   that the plaintiff national bank was a citizen of California was
21 based upon the allegation that plaintiff had "its principal office
   in the state of California."  <u>Twin Harbors</u>, 465 F.2d at 491.  So
22 <u>Twin Harbors</u> could possibly support the view that the Ninth Circuit
   interpreted <u>American Surety</u> as referring to what is now called the
23 "main office," rather than the principal place of business.
   However, it could equally mean that the term "principal office"
24 used in <u>Twin Harbors</u> was considered interchangeable with "principal
   place of business."  In any event, <u>Twin Harbors</u>'s citation of
25 <u>American Surety</u> dispels Wells Fargo's insinuation that the 1943
   case was abandoned by the Ninth Circuit, and or that the Ninth
26 Circuit agrees that it was wrong when decided.

1    principal place of business, even though it had "branch

2    business offices" in other states.

3  U.S. Nat. Bank, 434 F.2d at 1020.[31]

4    **C.   Was American Surety Effectively Superseded by Statute in**

5       **1994?**

6    Wells Fargo next asserts that 1994 legislation establishes

7  where banks are "located," thus superseding American Surety.  It

8  correctly points out that   American Surety, in determining the

9  meaning of "located," stated that "[n]o case defining 'located',

10  in this connection, has come to our attention."   American Surety,

11  133 F.2d at 161-62 (emphasis added).  Wells Fargo then asserts that

12  that problem was fixed in 1994 when Congress defined "home State."

13  Dkt. No. 58 at p.12.

14    The argument is a non-sequitur.  Congress in 1994 did   not

15  define the meaning of "located," it defined the meaning of "home

16  State."  Congress defined what it meant by "home State" in

17  legislation addressing whether banks can operate branch offices in

18  states other than their "home States."   See Pub. L. 103-328, 108

19  Stat. 2349 (1994).  And what it meant by "home State" was the state

20  where its "main office" was.  It did not state or indicate that the

21  "home State" or the "main office" was where the bank was "located"

22  for diversity jurisdiction purposes.  Nor did Schmidt rely on this

23  ─────────────────

24    [31] Hill is also problematic however, for another reason.  It
   uses the definition of "located" in the jurisdictional statute to
   mean the same thing as "located" in the venue statute.  However,
25  the Supreme Court has now established that "located" in the venue
   statute is not the same as "located" in the national bank
26  jurisdiction statute.  Schmidt, 546 U.S. at 315-16.

definition in finding that a bank was located where it had its main office.  Schmidt, in a footnote simply recites that fact that "[t]he state in which the main office is located qualifies as the bank's 'home State' under the banking laws."  126 S. Ct. at 307 n.1.

It is true that speaking generally, it makes sense to think of bank's "home State" as a place where it is located, but the question here is not a general one.  The question is where a bank is "located" for purposes of diversity jurisdiction.  Thus, when American Surety said Congress had not defined "located" in this connection, it was referring to the jurisdictional connection.

Even if Wells Fargo is correct that Congress has now told us where national banks are "located" for purposes of interstate banking regulations, that definition does not carry over to the jurisdictional definition of "located."  The Supreme Court made that very clear in Schmidt:

Finally, the Court of Appeals stressed that in Citizens & Southern Nat. Bank v. Bougas, 434 U.S. 35 (1977), this Court interpreted the term "located" in the former venue statute for national banks, see 12 U.S.C. § 94 (1976 ed.), as encompassing any county in which a bank maintains a branch office. 388 F.3d, at 419–420. Reasoning that "the jurisdiction and venue statutes pertain to the same subject matter, namely the amenability of national banking associations to suit in federal court," the panel majority concluded that,

1          "under the in pari materia canon[,] the two statutes

2          should be interpreted" consistently.  Id., at 422.

3  Wachovia Bank v. Schmidt, 546 U.S. 303, 313 (2006).  But Schmidt

4  expressly rejected the view that "located" for purposes of venue

5  meant "located" for purposes of diversity jurisdiction, even though

6  the statutes used the identical word "located:"

7          Bougas does not control the meaning of § 1348.  In that

8          case, we construed a now-repealed venue provision, which

9          stated   that   actions   against   national   banking

10         associations could be filed "in any State, county, or

11         municipal court in the county or city in which said

12         association [was] located."  434 U.S., at 35–36 (quoting

13         12 U.S.C. § 94 (1976 ed.)).  We held that, for purposes

14         of this provision, a national bank was located, and

15         venue was therefore proper, in any county or city where

16         the bank maintained a branch office.  434 U.S., at

17         44–45.

18  Finding that venue and diversity jurisdiction statutes were not in

19  pari materia, it rejected the assertion that it therefore had to

20  find that "located" for diversity jurisdiction mean wherever the

21  bank had a branch, precisely what it had found for venue.

22         The 1994 legislation does not even use the term "located."

23  It cannot be said, therefore, to define the term "located" in the

24  diversity jurisdiction statute.

25         **D.   Was American Surety "Simply Wrong?"**

26         Wells Fargo argues that the Ninth Circuit was "simply wrong"

32

in deciding American Surety.  That argument is not properly made to this court.  This court is bound by  American Surety in the absence of contrary intervening en banc Ninth Circuit, Supreme Court, or federal statutory authority.

**E.  Is American Surety Not Precedential on Citizenship?**

Defendant asserts that the "location" holding of  American Surety is not binding because it is dicta, "'made casually and without analysis, uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention ...'" Dkt. No. 58 at p.17 (emphasis in text), citing V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union H.S. Dist., 484 F.3d 1230, 1232 n.1 (9th Cir. 2007).  There is quite a bit wrong with this argument.

First, both the district court and the Ninth Circuit issued reasoned opinions on the meaning of "located" in the diversity jurisdiction statute.  The district court engaged in close statutory construction, discussed the statute, its legislative history, other statutes, Supreme Court precedent, cases from other circuits, and other legislation in reaching its conclusion.  The Ninth Circuit engaged in its own close reading of the statute, applied Supreme Court precedent to the issue, analyzed Congressional intent, and ultimately found that the district court "was right."  The holding of American Surety is binding precedent, not throw-away dicta.

Second, the jurisdictional holding was not a mere "prelude" to the main action of American Surety.  It was a determination on

1   federal subject matter jurisdiction, and had to be decided before

2   the merits.  Under Wells Fargo's reasoning, every decision that

3   determined jurisdiction before the merits would be dicta, a mere

4   "prelude."  That is not so.

5        **F.   Did the 2006 Congress, post-<u>Schmidt</u>, "Understand" that**

6             **"Main Office" Was the Sole Test of Citizenship?**

7        Wells Fargo argues that this court should defer to the

8   "understanding" of the 2006 Congress – as Wells Fargo interprets

9   that understanding – in interpreting 28 U.S.C. § 1348, even though

10  that statute was most recently amended in 1948. [32]  This court

11  declines the invitation.  "[T]he acts of a subsequent legislature

12  tell us nothing definitive about the meaning of laws adopted by an

13  earlier legislature." <u>Fair Housing Council of San Fernando Valley</u>

14  <u>v. Roommate.com, LLC</u>, 666 F.3d 1216, 1223 (9th Cir. 2012), <u>quoting</u>

15  <u>Pension Benefit Guar. Corp. v. LTV Corp.</u>, 496 U.S. 633, 650 (1990)

16  ("[S]ubsequent legislative history is a hazardous basis for

17  inferring the intent of an earlier Congress") (internal quotations

18  omitted).

19       In any event, the legislation Wells Fargo is referring to

20  expressly states that for Federal Savings Associations (not

21  national banks like Wells Fargo), for diversity jurisdiction, the

22  bank is a citizen "only of the State in which such savings

23  association has its home office."  12 U.S.C. § 1464(x).  Congress

24  did <u>not</u> amend the corresponding statute addressing the citizenship

25

26       [32] <u>See</u> Act of June 25, 1948, ch. 646, 62 Stat. 933.

1 of national banks.  This legislation is not relevant to the meaning

2 of "located" in 28 U.S.C. § 1348.

3     **G.  Should the District Court Create a Split of Authority?**

4     Wells Fargo's request that this court avoid a split of

5 authority within the Ninth Circuit comes too late.  The district

6 courts in the Ninth Circuit are already split, post-<u>Schmidt</u>, on the

7 meaning of Section 1348, and were so long before <u>Guinto</u> was

8 decided.  However, this court does not have the power to resolve

9 the split.  Wells Fargo had the power to bring the split to the

10 attention of the Ninth Circuit by appealing <u>Guinto</u>, but it chose

11 not to do so.[33]

12 **II.  CONCLUSION**

13     Wells Fargo has not shown that this court should reverse

14 course from the one it set in <u>Guinto</u>.  Wells Fargo is a citizen of

15 California as well as a citizen of South Dakota.  Since plaintiffs

16 are, at least prima facie, citizens of California, diversity

17 jurisdiction does not exist, and did not exist at the time the

18 matter was removed.

19     Accordingly, this case is **REMANDED** to the state court for lack

20 of federal jurisdiction.

21     IT IS SO ORDERED.

22     DATED:  April 2, 2012.

23

                                LAWRENCE K. KARLTON
                                SENIOR JUDGE

24                                 UNITED STATES DISTRICT COURT

---

25     [33] It appears that Wells Fargo has appealed the

26 Section 1367(c) remand in <u>Rouse v. Wachovia Mortgage, FSB</u>, 2012 WL
174206 (C.D. Cal. 2012) (<u>see</u> Dkt. No. 46, 11-CV-928).